***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. AIG Insurance was the carrier on risk at all relevant times herein.
4. Plaintiff's average weekly wage was $278.60 per week.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 57 years old with a ninth grade education. On August 8, 2000, plaintiff began her employment with Barbara Flint Assisted Living in the position of head cook. She was responsible for cooking breakfast and lunch for approximately 60 residents. Her job duties required a lot of lifting, such as industrial pots and pans weighing approximately fifteen to twenty pounds without contents, and bags of food, such as fifty-pound bags of potatoes. Plaintiff did the majority of the cooking by herself.
2. On August 2, 2001, plaintiff slipped and fell on a wet floor in the dining room during the course and scope of her employment. An ambulance transported her to Craven Regional Medical Center. X-rays were taken of plaintiff's lumbar spine and she was treated for low back pain, right foot pain and hip pain in the emergency room. She was out of work two days. Plaintiff had pain in her left shoulder following the accident. She believed the pain would resolve on its own and did not seek additional medical treatment at that time. Plaintiff's supervisor, Ms. Dillahunt, stated that Plaintiff told her she experienced pain in her left shoulder following the August 2, 2001 incident.
3. Plaintiff was again injured on or about November 1, 2001 when she once again slipped and fell on a wet floor at work. Ms. Ryan Horton, a co-worker, witnessed this accident. Plaintiff fell to the floor, first on her hands and then to her knees. Plaintiff reported this accident to Ms. Dillahunt. Plaintiff did not seek medical treatment immediately following this accident. Plaintiff experienced pain later that evening in her left arm and shoulder and took Extra Strength Tylenol to ease the pain. Plaintiff believed the pain would subside in a few days.
4. Ms. Dillahunt, the defendant-employer's administrator, knew plaintiff had shoulder pain following the August 2001 fall. She stated plaintiff appeared to have more pain the two months prior to being taken out of work. Ms. Dillahunt provided assistance to lift heavy pots off the stove and pans out of the oven, as plaintiff was unable to lift heavy objects due to pain in her shoulder. Ms. Dillahunt testified, at the hearing before the Deputy Commissioner, plaintiff was an outstanding and credible employee. Ms. Dillahunt further testified plaintiff might have told her about the second fall, even though she did not prepare an accident report.
5. Ms. Horton testified at the hearing before the Deputy Commissioner that she saw plaintiff slip and fall at work around November 1, 2001. Ms. Horton saw plaintiff fall to the floor, and then grab onto the steam table to pull herself back up. Ms. Horton further testified plaintiff went to Ms. Dillahunt's office following the accident. Ms. Dillahunt came to the kitchen some time later to check on plaintiff.
6. Ms. Horton knew plaintiff only as a co-worker and has not had contact with her outside of work.
7. On January 16, 2003, plaintiff treated with Dr. Larnick for her shoulder pain. On February 4, 2002, she underwent an MRI of her cervical spine and left shoulder that revealed bilateral spurring at L4-L5, L5-L, and L6-L7, causing mild narrowing of the exit foramina. The MRI also revealed a partial undersurface tear at the muscolotendiaus junction with a full thickness tear without retraction at the insertion of the supraspinatus tendon. Dr. Larnick referred plaintiff to Dr. Armistead for an orthopedic evaluation.
8. Dr. Larnick testified that he treated plaintiff for general care and that he did not specifically treat her for the shoulder injury due to the extent of the injury. Dr. Larnick believed plaintiff to be a credible patient.
9. Dr. Armistead diagnosed plaintiff with a torn rotator cuff and possible fracture to the left shoulder on February 11, 2002. Dr. Armistead recommended surgery following review of the MRI. On February 13, 2002, plaintiff was admitted to Craven Regional Medical Center where she underwent a rotator cuff repair and partial acrominectomy performed by Dr. Armistead. Plaintiff was discharged on February 17, 2002.
10. On February 21, 2002, plaintiff followed-up with Dr. Armistead, and was referred to physical therapy. On March 26, 2002, plaintiff reported increased pain in her shoulder, underwent an injection at this visit and continued physical therapy. On April 2, 2002, she regained full range of motion in her shoulder but continued to have pain. On May 28, 2002, a physical exam revealed narrowing of the AC joint, and a second injection was given. On July 2, 2002, plaintiff underwent a third injection
11. On July 9, 2002, Dr. Armistead recommended a second surgery to extract a bone fragment. On July 12, 2002, plaintiff underwent a second operation, to remove the bone fragment and a second rotator cuff repair. Dr. Armistead performed the second surgery and found another tear of the rotator cuff mechanism and a bone fragment.
12. When asked about Plaintiff's prognosis, Dr. Armistead stated plaintiff would not regain full function and would continue to have pain.
13. At a follow-up visit on July 31, 2002, Dr. Armistead noted that her range of motion was limited and physical therapy was continued. Plaintiff continued to have pain and Dr. Armistead began administering injections again in September 2002. On December 5, 2002, Dr. Armistead found that she had not regained any further range of motion. On January 14, 2003, plaintiff continued to have pain, and was given another injection.
14. On February 4, 2003, Dr. Armistead noted in his records he was doubtful plaintiff would be able to resume work given the length of time that she had problems with her shoulder. Plaintiff has continued to receive additional injections due to her pain.
15. While Dr. Armistead did not recall placing restrictions on plaintiff's ability to work, he stated that she would have had very limited use of her upper extremity. Dr. Armistead did not address restrictions because he believed she would not be working during the time she had surgery and her recovery period.
16. Dr. Armistead opined plaintiff's work-related fall more likely than not caused the rotator cuff tear.
17. Dr. Armistead was willing to complete an Industrial Commission Form 25R for the purpose of assigning a permanent partial disability rating.
18. Dr. Armistead further opined plaintiff could not lift over 15 pounds with her left arm, and she could not return to her job as head cook for defendant-employer.
19. Dr. Armistead stated that a person can start with a small tear which gradually extends and the pain gradually increases over time. Plaintiff was relatively young to have a degenerative cuff tear and that said tear for someone at her age with a unilateral problem would generally have been caused by trauma. Dr. Armistead opined plaintiff had a large unilateral tear caused by trauma. Dr. Armistead further opined pain caused by a tear progresses and becomes more symptomatic over time. He also opined Tylenol may have suppressed plaintiff's pain.
20. Dr. Armistead has treated Plaintiff over the past ten years and found plaintiff to be credible.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on August 2, 2001, and on or about November 1, 2001. N.C. Gen. Stat. § 97-2 (6).
2. As a result of her compensable injuries by accident, plaintiff is entitled to temporary total disability compensation at the rate of $185.74 per week from February 13, 2002 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. As a result of her compensable injuries, on August 2, 2001 and November, 2001, plaintiff is entitled to all medical treatment for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief, or lessen Plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $185.74 per week for the period beginning February 13, 2002 and continuing until further Order of the Commission. Compensation due which has accrued shall be paid in a lump sum subject to attorney's fees hereinafter provided.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injuries by accident on or about August 2, 2001 and November 1, 2001 for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of 25% of the compensation due is hereby approved for Plaintiff's counsel. Of the amount that has accrued, 25% shall be deducted and sent directly to Plaintiff's counsel. Of the continuing amount the Defendants shall send every fourth compensation check to Plaintiff's counsel.
4. Defendants shall pay the costs, including an expert witness fee of $385.00 to Dr. Ray B. Armistead if not paid by previous order.
This the ___ day of June, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER